UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL HOLDINGS ENTERPRISES, LLC, a Nevada limited liability company,<br><br>                Plaintiff,<br>  vs.<br><br>SEASHORE MARKETING GROUP, LLC, a California limited liability company,<br><br>                Defendant. | Case No.: 2:15-cv-2131-GMN-PAL<br><br>ORDER |

Pending before the Court is Plaintiff Capital Holdings Enterprises, LLC's ("Plaintiff's") Motion for Summary Judgment. (ECF No. 14). Defendant Seashore Marketing Group, LLC ("Defendant") did not file a Response, and the deadline to do so has passed.

**I.      BACKGROUND**

The case arises out of a Loan Agreement and Promissory Note (collectively, the "Loan Documents") between two third-party companies, Pinnacle Solutions Enterprises, Inc. ("Pinnacle") and Celebrity Beverage Group, LLC ("Celebrity"). (Compl. ¶ 6, Ex. A to Not. of Removal, ECF No. 1). Celebrity representative and CEO Keith Aaron Hale ("Hale") personally guaranteed the loan. (*Id.* ¶ 8). As alleged in the Complaint, Pinnacle loaned Celebrity $148,640.60 on April 29, 2013, which was to be repaid on May 2, 2013, at 3:00 p.m. EST, with 10 percent interest per month if default, along with costs and expenses. (*Id.* ¶¶ 6, 7, 9). Plaintiff alleges that Celebrity and Hale failed to tender payment on May 2, 2013. (*Id.* ¶ 10). Since then, Pinnacle has assigned its rights under the Loan Documents to Plaintiff, and Defendant has assumed all liabilities and obligations under the Loan Documents in place of

Hale. (*Id.* ¶¶ 11–13).  Plaintiff alleges that as of July 27, 2015, Defendant owes $500,515.00. (*Id.* ¶ 16).

Plaintiff initiated this action by filing the original complaint in state court on September 22, 2015, asserting claims for breach of contract, unjust enrichment, and declaratory relief against Defendant. (*Id.* ¶¶ 19–39).  Plaintiff also requested prejudgment and post-judgment interest, along with attorneys' fees and costs. (Compl. 5:27–6:3).  On November 6, 2015, Defendant subsequently removed the action to this Court under diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). (Pet. for Removal, ECF No. 1).  On November 18, 2015, Defendant filed its Answer. (Answer to Compl., ECF No. 7).

On March 29, 2016, Plaintiff filed the instant Motion for Summary Judgment. (Mot. Summ. J. ("MSJ"), ECF No. 14).  Defendant's Response was due on April 22, 2016.  However, on April 7, 2016, Defendant's counsel, Adam H. Springel, Esq. and Michael A. Arata, Esq., filed a Motion to Withdraw as Counsel. (Mot. Withdraw Counsel, ECF No. 15).  In their Motion, counsel cite as their reason for withdrawing Defendant's "unwillingness to further participate in this case nor pay for legal services rendered on its behalf," along with Defendant's indication of its "inten[t] to file for bankruptcy protection." (*Id.* 2:15–17).  On April 12, 2016, the Court granted the Motion to Withdraw as Counsel and extended Defendant's deadline to file its Response by over a month to May 31, 2016. (Order on Mot. Withdraw Counsel 1:26–28, 2:14–15, ECF No. 17).  Additionally, the Court explained that because Defendant is a corporation, it cannot appear except through counsel. (*Id.* 1:18–20) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); *United States v. High Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993)).  As such, the Court provided Defendant with a deadline for obtaining new counsel of May 5, 2016. (*Id.* 2:1–3).  Defendant did not comply or request an extension of time to comply with either deadline.  On June 1,

2016, Plaintiff filed a Notice of Non-Opposition to the Motion for Summary Judgment. (ECF No. 18).

On November 9, 2016, the Court ordered Defendant to show cause by December 8, 2016, why its answer should not be stricken and default entered against it for failure to comply with the Court's Order (ECF No. 17) to obtain substitute counsel as it is a corporation. (Order Show Cause ("OSC"), ECF No. 19).  On December 19, 2016, Defendant untimely filed a Response to the OSC, explaining that the OSC was not forwarded to the company's new mailing address. (Resp. to OSC, ECF No. 20).  In its Response, Defendant requested a 120-day extension to find an attorney because it is a small company, this case has caused financial hardship, and as the company is in California, it is difficult to find a lawyer. (*Id.*).  The Court reluctantly granted Defendant's request for an extension to retain counsel until April 7, 2017. (ECF No. 21).  However, as Defendant's Response to the Motion for Summary Judgment was due approximately nine months ago, the Court finds that it is appropriate to address the Motion for Summary Judgment now.  Even if Defendant retains new counsel by its current deadline, new counsel will not be permitted to file an untimely Response to the instant Motion for Summary Judgment.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). Then, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Generally, under the District of Nevada Local Rules, the failure to file a response to a motion constitutes consent to the granting of the motion. (D. Nev. LR 7-2(d)).  However, this Local Rule specifically carves out an exception regarding motions for summary judgment. (*Id.*). Accordingly, the Court must consider the merits of Plaintiff's Motion and determine if there are no genuine issues of material fact such that Plaintiff is entitled to judgment as a matter of law. *See also Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995), *as amended* (Jan. 27, 1995) ("[A] motion for summary judgment cannot be granted simply because the opposing party violated a local rule. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir.1993).").

**A. Breach of Contract**

In Nevada, to succeed on a claim for breach of contract, a party must demonstrate: (1) the existence of a valid contract; (2) that the plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.") (quotations omitted); *see also Brochu v. Foote*

1  *Enterprises, Inc.*, No. 55963, 2012 WL 5991571, at *5 (Nev. Nov. 29, 2012) ("To prove
2  a breach of contract, the plaintiff must show an existing valid agreement with the defendant, the
3  defendant's material breach, and damages."). Generally, a contract is valid and enforceable if
4  there has been "an offer and acceptance, meeting of the minds, and consideration." *May v.*
5  *Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

   Here, as to breach of contract, moving party Plaintiff has satisfactorily presented evidence to meet its "initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480. First, a valid contract existed initially between Pinnacle, Celebrity, and Hale, as evidenced by the Loan Agreement. (Loan Agreement at 8–11, Ex. 1-A to MSJ, ECF No. 14-1). Pursuant to the Loan Agreement, Pinnacle offered a "bridge loan" to Celebrity in the amount of $148,640.60, which was personally guaranteed by Hale. (*Id.*); (*see also* Promissory Note at 12–15, Ex. 1-A to MSJ, ECF No. 14-1). The loan was to be repaid under the terms of the Loan Documents. Hale signed the Loan Agreement on his own behalf and that of Celebrity, evidencing acceptance. (Loan Agreement at 11). The written Loan Documents demonstrate a meeting of the minds, and the consideration as stated in the Loan Agreement was "the terms and conditions herein contained." (*Id.* at 8). The valid contract inquiry does not end here, however, as the parties in this case are not the parties to the original contract.

   First, Plaintiff provided evidence supporting its allegation that Defendant assumed the liability of Hale under the Loan Documents. Such evidence includes the Memorandum of Agreement between Pinnacle and Defendant, signed by Defendant, wherein Defendant specifically "agrees to assume the position of [Hale under the] defaulted [Loan Documents]." (Mem. of Agreement at 6, Ex. 1-A to MSJ, ECF No. 14-1). Plaintiff also attached to its Motion a letter dated May 30, 2013, from Pinnacle to Robert Gallagher, Managing Director of Defendant, in which Pinnacle confirms Defendant's "purchase and acquisition of the defaulted

Promissory Note . . . effective May 30, 2013." (Letter to Gallagher, Ex. 1-B to MSJ, ECF No. 14-1). Additionally, Plaintiff provided evidence that on February 27, 2014, Pinnacle validly assigned its interest in the Loan Documents to Plaintiff. (Sampson Decl. ¶ 12, Ex. 1 to MSJ, ECF No. 14-1); (Assignment at 29–30, Ex. 1-C to MSJ, ECF No. 14-1); (Not. of Assignment at 32, Ex. 1-D to MSJ, ECF No. 14-1).[1] Accordingly, the Court finds that Plaintiff has sufficiently demonstrated that a valid contract exists between Plaintiff and Defendant.

As to the other elements of breach of contract, Plaintiff performed by Pinnacle's original loan to Celebrity. (Loan Agreement at 8); (Requests for Admission[2] 15:23–24, Ex. 2-B to MSJ, ECF No. 14-2). Defendant breached the terms of the Loan Documents by failing to repay the loan, which was already in default when Defendant assumed the liability. (Sampson Decl. ¶ 9, 14); (Mem. of Agreement at 6); (Requests for Admission 15:25–16:3, 16:14–15). Lastly, Plaintiff has been damaged by the breach because it has not received repayment of the original loan. (Sampson Decl. ¶¶ 9, 13, 14). Plaintiff specifically asserts in a Declaration by its designated manager Rodney Sampson: "As of July 27, 2015, the balance owed by Defendant for the Loan totaled $500,515.00." (*Id.* ¶ 15). Accordingly, the Court finds that Plaintiff has provided sufficient evidence as to each element of breach of contract that "would entitle it to a

---

[1] The Court also notes that the Promissory Note expressly states that it "shall be the joint and several obligation of Borrower, sureties, guarantors, and endorses hereof and shall be binding upon them and their respective heirs, executors, administrators, successors and assigns." (Promissory Note at 13). This language indicates the original parties' intent regarding assignment and assumption by other parties in the future.

[2] Answers to interrogatories may be cited to support factual assertions for the purposes of summary judgment. Fed. R. Civ. P. 56(c)(1)(A). Under Federal Rule of Civil Procedure 36, "A party may serve on any other party a written request to admit . . . the truth of any [related] matters." Fed. R. Civ. P. 36(a)(1). Further, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Here, on January 21, 2016, Plaintiff served its Requests for Admission on Defendant. (Requests for Admission at 11–18, Ex. 2-B to MSJ, ECF No. 14-2). Attached to Plaintiff's Motion is an affidavit by Plaintiff's counsel explaining that Defendant's prior counsel emailed her requesting a two-week extension, and although Plaintiff's counsel followed up, Defendant "never served written answers or objections to the Requests for Admission." (Perkins Decl. ¶¶ 6–10, Ex. 2 to MSJ, ECF No. 14-2). Plaintiff also attached copies of the related correspondence. (Email from Arata, Ex. 2-C to MSJ, ECF No. 14-2); (Email from Perkins, Ex. 2-D to MSJ, ECF No. 14-2). Accordingly, the Court finds that the unanswered interrogatories constitute admissions by Defendant that may be used to support Plaintiff's Motion for Summary Judgment.

directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.

As Plaintiff has satisfied its initial burden, the burden then shifts to Defendant to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. However, here, Defendant failed to file a Response or provide any evidence demonstrating a differing version of the truth that could be presented at trial. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 631. While Defendant denied many of Plaintiff's factual allegations in its Answer (*see, e.g.*, Answer to Compl. ¶¶ 11–12, 14–18), such a denial is insufficient, as it is conclusory and unsupported by any factual data. *See Taylor*, 880 F.2d at 1045. Accordingly, the Court finds that summary judgment is appropriate on Plaintiff's breach of contract claim as there remains no genuine issue of material fact. Based on the evidence provided by Plaintiff, the Court finds that Plaintiff's requested damages of $500,515.00 as of July 27, 2015, plus additional prejudgment interest[3] accruing as of the date of this Order, is appropriate.

Plaintiff's Complaint additionally requested post-judgment interest, although Plaintiff's Motion for Summary Judgment did not address this request. Nevertheless, post-judgment interest is mandatory and runs from the date of judgment until satisfied. *See Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal, of Life Activities*, 518 F.3d 1013, 1017–18 (9th Cir. 2008). In diversity cases, "federal law determines the rate of post judgment interest." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013). That rate is "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ]

---

[3] "In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates." *In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002). Nevada law allows contracting parties to "specify in writing the rate upon which they agree, that interest is to be compounded if so agreed, and any other charges or fees to which they have agreed." Nev. Rev. Stat. 99.050. As the Nevada Supreme Court has explained, "Prejudgment interest is viewed as compensation for use by defendant of money to which plaintiff is entitled from the time the cause of action accrues until the time of judgment; it is not designed as a penalty." *Ramada Inns, Inc. v. Sharp*, 711 P.2d 1, 2 (Nev. 1985).

the date of the judgment." 28 U.S.C. § 1961.  Therefore, post-judgment interest here shall run on the entire amount of the judgment, compounded annually,[4] from the date of entry of judgment until satisfied.[5]

### B. Unjust Enrichment and Declaratory Relief

Plaintiff's claim for unjust enrichment was argued in the alternative to its breach of contact claim.  (MSJ 9:20–21) ("If the Loan Documents and Assumption are not found to be a valid contract, Plaintiff is entitled to summary judgment because it is undisputed that Defendant has been unjustly enriched by failing to repay the loan.").  Because the Court found a valid contract exists here, the Court need not examine Plaintiff's unjust enrichment claim.  Indeed, actions based on unjust enrichment are not "available when there is an express written contract." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).  Accordingly, Plaintiff's claim for unjust enrichment is dismissed.

Further, Plaintiff's Complaint requested declaratory relief "of the parties' respective rights, duties and obligations under the Loan Documents and the Assumption, that in accordance with the same, Plaintiff should be repaid in full, including principal and interest." (Compl. ¶ 37).  Plaintiff does not provide any argument as to the requested declaratory relief in its Motion for Summary Judgment.  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985).  Further, "[v]arious courts have held, for example, that, [w]here determination of [a] breach of contract claim [will] resolve any

---

[4] 28 U.S.C. § 1961(b).
[5] In both its Complaint and Motion for Summary Judgment, Plaintiff also seeks reasonable attorneys' fees and costs. (Compl. 6:1–3); (MSJ 11:9).  However, such a request is properly made by motion no later than fourteen days after the entry of judgment pursuant to Federal Rule of Civil Procedure 54(d).

question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) (internal quotation marks and citation omitted).  The Court finds that Plaintiff's breach of contract claim here sufficiently encompasses the requested declaratory relief, and therefore, Plaintiff's claim for declaratory relief is dismissed.[6]

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 14) is **GRANTED in part, DENIED in part**.  Plaintiff's claim for breach of contract is granted in the amount of $500,515.00 as of July 27, 2015, and Plaintiff shall submit a proposed form of judgment that includes an updated interest calculation by Friday, March 10, 2017. Summary judgment is denied as to Plaintiff's remaining claims, which are dismissed.

**IT IS FURTHER ORDERED** that post-judgment interest shall accrue on the entire amount of the judgment, compounded annually, from the date of entry of judgment until satisfied.

**IT IS FURTHER ORDERED** that all deadlines set prior to this Order shall be vacated.

**DATED** this __24__ day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[6] Because this Order resolves all issues in this case, all other deadlines are vacated.